# UNITED STATES DISTRICT COURT

for the

Central District of California

|  |  |
|---|---|
| In the Matter of the Search of:<br>Information associated with accounts identified as<br>Apple IDs "ronocm10600@gmail.com" and/or<br>"ronoc10600@yahoo.com," which are within the<br>possession, custody, or control of Apple, Inc. | Case No. 8:21-MJ-00641 |

## APPLICATION FOR WARRANT BY TELEPHONE PURSUANT TO 18 U.S.C. § 2703

I, a federal law enforcement officer, request a warrant pursuant to Title 18, United States Code, Section 2703, and state under penalty of perjury that I have reason to believe that within the following data:

*See Attachment A*

There are now concealed or contained the items described below:

*See Attachment B*

The basis for the search is:

☑ Evidence of a crime;
☑ Contraband, fruits of crime, or other items illegally possessed;
☐ Property designed for use, intended for use, or used in committing a crime.

The search is related to a violation of:

| *Code section(s)* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 2251 and 2252A | *(See Attachment B)* |

The application is based on these facts:

*See attached Affidavit, which is incorporated herein by reference.*

/s/ Kevin Leduc
_____
*Applicant's signature*
Kevin Leduc, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____

City and State: <u>Santa Ana, CA</u>

_____
*Judge's signature*
Hon. Karen E. Scott, U.S. Magistrate Judge
*Printed name and title*

AUSA: Benjamin R. Barron (714 338 3536)

**AFFIDAVIT**

I, Kevin Leduc, being duly sworn, declare and state as follows:

## I.   INTRODUCTION

1.   I am a Special Agent with the United States Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI).  I have been employed with HSI from May 2014 to the present.  I am currently assigned to HSI Orange County, California office.  As part of my duties and responsibilities as an HSI Special Agent, I am authorized to investigate crimes involving the sexual exploitation of children pursuant to Title 18, United States Code, Section 2251, et seq. As part of my official duties, I have investigated criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2252(a) and 2252A.  Through the course of my job as a Special Agent, I have viewed tens of thousands of images depicting child pornography (as defined in 18 U.S.C. § 2256) in various forms of media including computer media.  In addition, I have received formal training from both ICE and other organizations in the area of child pornography and child exploitation investigations.  I have also participated in the execution of numerous search warrants, many of which involved child exploitation and/or child pornography offenses.

2.   I make this affidavit in support of an application for a warrant for information associated with the iCloud accounts associated with the Apple ID's "ronocm10600@gmail.com" and

"ronoc10600@yahoo.com" (the "SUBJECT ACCOUNTS") that is stored
at premises controlled by Apple Inc. (the "PROVIDER"), a
provider of electronic communication and remote computing
services, headquartered at 1 Infinite Loop, Cupertino, CA 95014.[1]
The information to be searched is described in Attachment A.
This affidavit is made in support of an application for a
warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A)
and 2703(d)[2] to require the PROVIDER to disclose to the
government copies of the information (including the content of

---

[1] Because this Court has jurisdiction over the offense(s)
being investigated, it may issue the warrant to compel the
PROVIDER pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A).
See 18 U.S.C. §§ 2703(a) ("A governmental entity may require the
disclosure by a provider . . . pursuant to a warrant issued
using the procedures described in the Federal Rules of Criminal
Procedure . . . by a court of competent jurisdiction") and 2711
("the term 'court of competent jurisdiction' includes -- (A) any
district court of the United States (including a magistrate
judge of such a court) or any United States court of appeals
that -- (i) has jurisdiction over the offense being
investigated; (ii) is in or for a district in which the provider
of a wire or electronic communication service is located or in
which the wire or electronic communications, records, or other
information are stored; or (iii) is acting on a request for
foreign assistance pursuant to section 3512 of this title").

[2] The government is seeking non-content records pursuant to
18 U.S.C. § 2703(d).  To obtain the basic subscriber
information, which does not contain content, the government
needs only a subpoena.  See 18 U.S.C. § 2703(c)(1), (c)(2).  To
obtain additional records and other information--but not
content--pertaining to subscribers of an electronic
communications service or remote computing service, the
government must comply with the dictates of section
2703(c)(1)(B), which requires the government to supply specific
and articulable facts showing that there are reasonable grounds
to believe that the records or other information sought are
relevant and material to an ongoing criminal investigation in
order to obtain an order pursuant to 18 U.S.C. § 2703(d).  The
requested warrant calls for both records containing content (see
Attachment B paragraph II.10.a.) as well as subscriber records
and other records and information that do not contain content
(see Attachment B paragraph II.10.b.).

communications) described in Section II of Attachment B.  Upon receipt of the information described in Section II of Attachment B, law enforcement agents and/or individuals assisting law enforcement and acting at their direction will review that information to locate the items described in Section III of Attachment B.  Attachments A and B are incorporated herein by reference.

3.    As described more fully below, I respectfully submit there is probable cause to believe that the information associated with the SUBJECT ACCOUNTS constitutes evidence, contraband, fruits, or instrumentalities of criminal violations of 18 U.S.C. § 2251 (inducement, enticement, or coercion of minors to engage in sexual activity by means of interstate or foreign commerce), and 18 U.S.C. § 2252A (distribution, receipt, and possession of material constituting and containing child pornography).

4.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II.  <u>**DEFINITIONS**</u>

1.   The following definitions apply to this affidavit and Attachment B:

a.   The terms "minor," "sexually explicit conduct," "visual depiction," "producing," and "child pornography" are defined in 18 U.S.C. § 2256.

b.   "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

c.   The term "computer" is defined in 18 U.S.C. § 1030(e)(1).

d.   "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, "thumb," "jump," or "flash" drives, which are small devices that are plugged into a port on the computer, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to

restrict access to computer hardware (including physical keys and locks).

      e.   "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

      f.   The term "Internet" is defined as the worldwide network of computers — a noncommercial, self-governing network devoted mostly to communication and research with roughly 3.2 billion users worldwide. The Internet is not an online service and has no real central hub. It is a collection of tens of thousands of computer networks, online services, and single user components. In order to access the Internet, an individual computer user must use an access provider, such as a university, employer, or commercial Internet Service Provider ("ISP"), which operates a host computer with direct access to the Internet.

g.    The term "Internet Protocol" ("IP") is defined as the primary protocol upon which the Internet is based.  IP allows a packet of information to travel through multiple networks (groups of linked computers) on the way to its ultimate destination.

h.    The term "IP address" is defined as a unique number assigned to each computer directly connected to the Internet (for example, 74.100.66.74).  Each computer connected to the Internet is assigned a unique IP address while it is connected.  The IP address for a user may be relatively static, meaning it is assigned to the same subscriber for long periods of time, or dynamic, meaning that the IP address is only assigned for the duration of that online session.

i.    The term "Internet Service Provider" ("ISP") is defined as a business that allows a user to dial into or link through its computers, thereby allowing the user to connect to the Internet for a fee.  ISPs generally provide only an Internet connection, an electronic mail address, and maybe Internet browsing software.  A user can also connect to the Internet through a commercial online service such as AT&T, Verizon, or Time Warner Cable.  With this kind of connection, the user gets Internet access and the proprietary features offered by the online service, such as chat rooms and searchable databases.

j.    A "hash value" is a unique alpha-numeric identifier for a digital file.  A hash value is generated by a mathematical algorithm, based on the file's content.  A hash value is a file's "digital fingerprint" or "digital DNA."  Two

6

files having identical content will have the same hash value, even if the file names are different.  On the other hand, any change to the data in a file, however slight, will change the file's hash value, even if the file name is unchanged.  Thus, if two files have the same hash value, they are said to be identical, even if they have different file names.

　　　　k.　　"Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

　　　　l.　　A "storage medium" is any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

　　　　m.　　A "website" consists of textual pages of information and associated graphic images.  The textual information is stored in a specific format known as Hyper-Text Mark-up Language ("HTML") and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol ("HTTP").

### III.  <u>STATEMENT OF PROBABLE CAUSE</u>

### A.  CyberTipline Reports

5.　　The National Center for Missing & Exploited Children ("NCMEC") is the leading non-profit organization in the U.S. working with law enforcement, families, and the professionals who serve them on issues related to missing and sexually exploited children.  NCMEC has established a missing child

hotline and serves as the national clearinghouse for information related to these issues.

6.    NCMEC operates a CyberTipline to provide electronic service providers an effective means of reporting Internet-related child sexual exploitation, including possession, manufacture, and distribution of child pornography.  42 U.S.C. § 5773(b)(1)(P).  Any electronic service provider that discovers what appears to be child pornography must report that fact and its surrounding circumstances to the CyberTipline.  18 U.S.C. § 2258A(a).  See also United States v. Keith, 980 F. Supp. 2d 33, 39 (D. Mass. 2013).  NCMEC forwards information received from electronic service providers via the CyberTipline to an appropriate federal or state law enforcement agency.  18 U.S.C. § 2258A(c).

7.    Kik Messenger (hereinafter "Kik") is a mobile application designed for chatting or messaging owned and operated by Kik c/o Medialab.ai Inc. According to the publicly available document "Kik's Guide for Law Enforcement," to use this application, a user downloads the application to a mobile phone, computer, or other digital device via a service such as the iOS App Store, Google Play Store, Apple iTunes, or another similar provider.  Once the application is downloaded and installed, the user is prompted to create an account and username.  The user also creates a display name, which is a name that other users see when transmitting messages back and forth. Once the user has created an account, the user is able to locate

other users via a search feature.  While messaging, users can then send each other text messages, images, and videos.

8.    This investigation began when, in November 2020 and January 2021, KIK submitted CyberTipline Reports 82978917 and 84994994, respectively, to the NCMEC CyberTipline.  The CyberTipline Report 82978917 included fifteen videos of Child Sexual Abuse Material ("CSAM").  The CyberTipline Report 84994994 included twelve videos of CSAM.  For both CyberTipline Reports, KIK reported that they had viewed the entire contents of each of the files prior to the submission of the tips.

9.    I viewed all the files attached to the two CyberTipline Reports and saw that they depicted what appeared to be CSAM.  Described below are three of the video files included in CyberTipline Reports 82978917 and 84994994:

a.    The reported video file titled "a731b3fb-1a50-44a6-ad99-b7be9af468a0.mp4" is approximately twenty-five seconds in length and depicts a girl approximately 7 to 9 years of age lying on her back with her pants and underwear around her knees. An adult male is attempting to penetrate her anus while holding her legs in the air.

b.    The reported video file titled "ea52a7d1-523d-447f-b490-b7ac529a8822.mp4" is approximately forty-four seconds in length and depicts a girl approximately 9 to 11 years of age performing oral copulation on an adult's penis throughout the video.

c.    The reported video file titled "41e95454-a6d2-4978-bcf8-d243bcf3b25c.mp4" is approximately fourteen seconds in

length and depicts a girl approximately 8 to 10 years of age
lying naked on her back with a blanket over her chest while an
adult male inserts the tip of his penis in her vagina numerous
times.

**B.    Search of MCCULLOUGH's Person and Residence**

10.  Based on further investigation that MCCULLOUGH
controlled the KIK accounts relevant to the above CyberTipline
Reports, on July 8, 2021, the Hon. Douglas F. McCormick, United
States Magistrate Judge, approved a search warrant for
MCCULLOUGH's residence located at 26 Goldenbush, Irvine, CA
92604 and, on July 14, 2021, the Hon. Autumn D. Spaeth, United
States Magistrate Judge, approved a further search warrant for
the MCCULLOUGH's person.

11.  On July 20, 2021, the search warrants were executed.
From searching MCCULLOUGH's residence and person, agents seized,
among other things, an Apple iPhone 7, Model A1660 and an Apple
iPhone 12 Pro (the "iPhones").

12.  On July 21, 2021, Computer Forensic Agent John
Whitaker began performing data extractions on the iPhones.  On
or about August 2, 2021, SA Whitaker provided those extraction
reports to me.

13.  I analyzed the data extracted from the iPhones and
observed that the Apple ID's associated with the devices were
"ronocm10600@gmail.com" and "ronoc10600@yahoo.com," *i.e.*, the
email addresses associated with the SUBJECT ACCOUNTS.
Furthermore, during my review of the extracted data from both of

the iPhones, I found images and videos that I recognize to be child pornography, including the following:

      a.   a video file named "65d7e386-5574-4448-b00e-b49baf6cbb47", which was approximately 44-seconds in length and involves a female child approximately 7-9 years of age performing oral copulation on an adult male's penis until he ejaculates in her mouth; and

      b.   an image file named "039891c0-ff2f-45f1-afcb-650367a1962a_embedded_1.jpg", showing a female child approximately 4-6 years of age sitting naked on an adult males lap facing away from the camera while the adult male holds his erect penis attempting to insert it in the child.

14. On September 23, 2021, I reviewed KIK messenger attachments from the extracted data, which comprised approximately 9,000 files of which a portion were CSAM. I observed evidence that the user of the iPhones (*i.e.*, MCCULLOUGH) had distributed and/or received CSAM with others. For example, on November 6, 2020, the data shows that two images of CSAM were shared via KIK. I reviewed the images. One shows a female child approximately 8-10 years of age sitting naked with a dog between her legs licking her vagina. The other shows a female child approximately 7-9 years of age lying topless on her back as an adult male ejaculates on her face.

15. On approximately July 20, 2021, I sent the PROVIDER (Apple) a preservation letter requesting that information associated with ronocm10500@gmail.com be preserved for 90 days pursuant to 18 U.S.C. § 2703(f). On July 22, 2021, Apple

confirmed receipt of the request and provided case number 2021069354.

### IV.   BACKGROUND REGARDING APPLE ID AND iCLOUD

16.   Apple is a United States consumer electronics company that produces devices, including the iPhone, iPad, and iPod Touch, Apple Watch, and Apple TV all of which use Apple operating system software (including iOS, iPadOS, watchOS, and tvOS)the iOS operating system, and desktop and laptop computers based which use on the Mac OS operating system.

17.   Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

a.   Apple provides email service to its users through email addresses at the domains mac.com, me.com, and icloud.com.

b.   iMessage and FaceTime allow users of Apple devices to communicate with each other in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.  The iMessage and FaceTime services are exclusive to Apple devices.

c.   iCloud is a file hosting, storage, and sharing service provided by Apple.  iCloud can be utilized through numerous iCloud-connected services and can also be used to store Apple device backups and data associated with third-party apps.

d.    iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com.  iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers.  iCloud Drive can be used to store presentations, spreadsheets, and other documents.  iCloud Tabs enables iCloud to be used to synchronize webpages opened in the Safari web browsers on all of the user's Apple devices.  iWork Apps, a suite of productivity apps (Pages, Numbers, and Keynote), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations.  iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.  iCloud can also be used to back up various settings and history of a user's activity, such as searches and web history.

e.    Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

f.    Find My allows owners of Apple devices to remotely identify and track the location of, display a message on, and (in some instances) wipe the contents of devices registered with the service.

g.    Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

h.    The App Store and iTunes Store are used to purchase and download digital content.  Apps can be purchased and downloaded through the App Store on Apple devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS.  Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store.

18.  Apple services are accessed through use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services.  A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

19.  An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed.  Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail).  The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and

"notification" email addresses) can also be associated with an
Apple ID by the user.

20.   Apple captures information associated with the
creation and use of an Apple ID.  During the creation of an
Apple ID, the user must provide basic personal information
including the user's full name, physical address, and telephone
numbers.  The user may also provide means of payment for
products offered by Apple.  The subscriber information and
password associated with an Apple ID can be changed by the user
through the "My Apple ID" and "iForgot" pages on Apple's
website.  In addition, Apple captures the date on which the
account was created, the length of service, records of log-in
times and durations, the types of service utilized, the status
of the account (including whether the account is inactive or
closed), the methods used to connect to and utilize the account,
the Internet Protocol address ("IP address") used to register
and access the account, and other log files that reflect usage
of the account.  Because every device that connects to the
Internet must use an IP address, IP address information can help
to identify which computers or other devices were used to access
a SUBJECT ACCOUNT.

21.   Additional information is captured by Apple in
connection with the use of an Apple ID to access certain
services.  For example, Apple maintains connection logs with IP
addresses that reflect a user's sign-on activity for Apple
services such as iTunes Store and App Store, iCloud, Game
Center, and the My Apple ID and iForgot pages on Apple's

website.  Apple also maintains records reflecting a user's app
purchases from App Store and iTunes Store, "call invitation
logs" for FaceTime calls, and "mail logs" for activity over an
Apple-provided email account.  Records relating to the use of
the Find My service, including connection logs and requests to
remotely lock or erase a device, are also maintained by Apple.

22.  Apple also maintains information about the devices
associated with an Apple ID.  When a user activates or upgrades
an Apple device, Apple captures and retains the user's IP
address and identifiers (depending on the type of device) such
as the Integrated Circuit Card ID number ("ICCID"), which is the
serial number of the device's SIM card.  Similarly, the
telephone number of a user's iPhone is linked to an Apple ID
when the user signs into FaceTime or iMessage.  Apple also may
maintain records of other device identifiers, including the
Media Access Control address ("MAC address"), the unique device
identifier ("UDID"), and the serial number.  In addition,
information about a user's computer is captured when iTunes is
used on that computer to play content associated with an Apple
ID, and information about a user's web browser may be captured
when used to access services through icloud.com and apple.com.
Apple also retains records related to communications between
users and Apple customer service, including communications
regarding a particular Apple device or service, and the repair
history for a device.

23.  Apple provides users with five gigabytes of free
storage space on iCloud, and users can purchase additional

storage space.  That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain).  iCloud can also be used to store device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud.  Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

24.  In some cases, users may communicate directly with Apple about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Providers like Apple typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

25.   In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

26.   For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation.  Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

27.   In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device

18

identifier information can help to identify which computers or other devices were used to access the account.  Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

28.  Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

29.  Other information connected to an Apple ID may lead to the discovery of additional evidence.  For example, the identification of apps downloaded from the App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators.  In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

30.  Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

31.  I know that individuals who sexually exploit minors often devote large quantities of time building trust with their victims.  These types of crimes tend to lead suspects to communicating with their victims for a period of time to build this trust.  Various methods are used in order to achieve this, such as texting, chatting, using FaceTime, etc.  Based on my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling law enforcement to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

32.  The suspect in this investigation, MCCULLOUGH, is known to have shared Child Sexual Abuse Material ("CSAM").  Within the data extractions of the iPhones, evidence was located that showed he communicated with others for the purpose of sharing and receiving CSAM.  For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation.  Based on this Affiant's training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

33.  In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can

indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geolocation, date and time) may be evidence of who used or controlled the account at a relevant time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.  Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

34.  Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

35.  I know that MCCULLOUGH also utilized communication applications, such as KIK.  Other information connected to an Apple ID may lead to the discovery of additional evidence.  For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the

crimes under investigation or services used to communicate with co-conspirators.  In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

36.  Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services.  In this Affiant's training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## V.   <u>BACKGROUND ON THE SEIZURE OF DIGITAL EVIDENCE FROM THE PROVIDER</u>

37.  I know from my training and experience that the complete contents of an account may be important to establishing the actual user who has dominion and control of that account at a given time.  Accounts may be registered in false names or screen names from anywhere in the world with little to no verification by the service provider.  They may also be used by multiple people.  Given the ease with which accounts may be created under aliases, and the rarity with which law enforcement has eyewitness testimony about a defendant's use of an account, investigators often have to rely on circumstantial evidence to show that an individual was the actual user of a particular account.  Only by piecing together information contained in the contents of an account may an investigator establish who the

actual user of an account was.  Often those pieces will come
from a time period before the account was used in the criminal
activity.  Limiting the scope of the search would, in some
instances, prevent the government from identifying the true user
of the account and, in other instances, may not provide a
defendant with sufficient information to identify other users of
the account.  Therefore, the contents of a given account,
including the email addresses or account identifiers and
messages sent to that account, often provides important evidence
regarding the actual user's dominion and control of that
account.  For the purpose of searching for content demonstrating
the actual user(s) of a SUBJECT ACCOUNT, I am requesting a
warrant requiring the PROVIDER to turn over all information
associated with a SUBJECT ACCOUNT with the date restriction
included in Attachment B for review by the search team.

38.  Relatedly, the government must be allowed to determine
whether other individuals had access to a SUBJECT ACCOUNT.  If
the government were constrained to review only a small
subsection of an account, that small subsection might give the
misleading impression that only a single user had access to the
account.

39.  I also know based on my training and experience that
criminals discussing their criminal activity may use slang,
short forms (abbreviated words or phrases such as "lol" to
express "laugh out loud"), or codewords (which require entire
strings or series of conversations to determine their true
meaning) when discussing their crimes.  They can also discuss

aspects of the crime without specifically mentioning the crime involved.  In the electronic world, it is even possible to use pictures, images and emoticons (images used to express a concept or idea such as a happy face inserted into the content of a message or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon and parenthesis :) to convey a smile or agreement) to discuss matters.  "Keyword searches" would not account for any of these possibilities, so actual review of the contents of an account by law enforcement personnel with information regarding the identified criminal activity, subject to the search procedures set forth in Attachment B, is necessary to find all relevant evidence within the account.

40.  This application seeks a warrant to search all responsive records and information under the control of the PROVIDER, which is subject to the jurisdiction of this court, regardless of where the PROVIDER has chosen to store such information.

41.  As set forth in Attachment B, I am requesting a warrant that permits the search team to keep the original production from the PROVIDER, under seal, until the investigation is completed and, if a case is brought, that case is completed through disposition, trial, appeal, or collateral proceeding.

        a.   I make that request because I believe it might be impossible for a provider to authenticate information taken from a SUBJECT ACCOUNT as its business record without the original

production to examine.  Even if the provider kept an original copy at the time of production (against which it could compare against the results of the search at the time of trial), the government cannot compel the provider to keep a copy for the entire pendency of the investigation and/or case.  If the original production is destroyed, it may be impossible for the provider to examine a particular document found by the search team and confirm that it was a business record of the provider taken from a SUBJECT ACCOUNT.

b.   I also know from my training and experience that many accounts are purged as part of the ordinary course of business by providers.  For example, if an account is not accessed within a specified time period, it -- and its contents -- may be deleted.  As a consequence, there is a risk that the only record of the contents of an account might be the production that a provider makes to the government, for example, if a defendant is incarcerated and does not (perhaps cannot) access his or her account.  Preserving evidence, therefore, would ensure that the government can satisfy its Brady obligations and give the defendant access to evidence that might be used in his or her defense.

## VI.   <u>CONCLUSION</u>

42.  Based on the foregoing, I request that the Court issue the requested warrant.  The government will execute this warrant by serving the warrant on the PROVIDER.  Because the warrant will be served on the PROVIDER, which will then compile the requested records at a time convenient to it, reasonable cause

exists to permit the execution of the requested warrant at any time in the day or night.

_____
Kevin Leduc, Special Agent
Homeland Security
Investigations


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this ____ day of
September, 2021.


_____
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

### **PROPERTY TO BE SEARCHED**

This warrant applies to information associated with the Apple accounts identified as Apple IDs "ronocm10600@gmail.com" and/or "ronoc10600@yahoo.com," and specifically including associated iCloud and iTunes accounts, that is within the possession, custody, or control of Apple Inc., a company that accepts service of legal process at One Apple Park Way, M/S 169-5CLP, Cupertino, California 95014-2084, regardless of where such information is stored, held, or maintained.

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

## I. SEARCH PROCEDURES

1.    The warrant will be presented to personnel of Apple, Inc. (the "PROVIDER"), who will be directed to isolate the information described in Section II below.

2.    To minimize any disruption of service to third parties, the PROVIDER's employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the information described in Section II below.

3.    The PROVIDER's employees will provide in electronic form the exact duplicate of the information described in Section II below to the law enforcement personnel specified below in Section IV.

4.    With respect to contents of wire and electronic communications produced by the PROVIDER (hereafter, "content records," see Section II.10.a. below), law enforcement agents and/or individuals assisting law enforcement and acting at their direction (the "search team") will examine such content records pursuant to search procedures specifically designed to identify items to be seized under this warrant.  The search shall extract and seize only the specific items to be seized under this warrant (see Section III below).  The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques, including to search for known images

i

of child pornography.  The review of the electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

5.    The search team will not seize contraband or evidence relating to other crimes outside the scope of the items to be seized without first obtaining a further warrant to search for and seize such contraband or evidence.

6.    The search team will complete its search of the content records as soon as is practicable but not to exceed 120 days from the date of receipt from the PROVIDER of the response to this warrant.  The government will not search the content records beyond this 120-day period without first obtaining an extension of time order from the Court.

7.    Once the search team has completed its review of the content records and created copies of the items seized pursuant to the warrant, the original production from the PROVIDER will be sealed -- and preserved by the search team for authenticity and chain of custody purposes -- until further order of the Court.  Thereafter, the search team will not access the data from the sealed original production which fell outside the scope of the items to be seized absent further order of the Court.

8.   The special procedures relating to digital data found in this warrant govern only the search of digital data pursuant to the authority conferred by this warrant and do not apply to any search of digital data pursuant to any other court order.

9.   Pursuant to 18 U.S.C. § 2703(g) the presence of an agent is not required for service or execution of this warrant.

## II.   INFORMATION TO BE DISCLOSED BY THE PROVIDER

10.   To the extent that the information described in Attachment A is within the possession, custody, or control of the PROVIDER, regardless of whether such information is located within or outside of the United States, including any information that has been deleted but is still available to the PROVIDER, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the PROVIDER is required to disclose the following information to the government for each SUBJECT ACCOUNT listed in Attachment A:

a.   All contents of all wire and electronic communications associated with the SUBJECT ACCOUNTS, limited to that which occurred between July 20, 2020, to July 20, 2021, and the date of this warrant,[3] including:

i.   All stored files and other records stored on iCloud for each SUBJECT ACCOUNT, including all device backups, all Apple and third-party app data, all files and other records

---

[3] To the extent it is not reasonably feasible for the PROVIDER to restrict any categories of records based on this date restriction (for example, because a date filter is not available for such data), the PROVIDER shall disclose those records in its possession at the time the warrant is served upon it.

related to iCloud Mail, iCloud Photo Sharing, My Photo Stream,
iCloud Photo Library, iCloud Drive, iWork (including Pages,
Numbers, and Keynote), iCloud Tabs, and iCloud Keychain, and all
address books, contact and buddy lists, notes, reminders,
calendar entries, images, videos, voicemails, device settings,
and bookmarks;

   ii.  All emails, communications, or messages of
any kind associated with the SUBJECT ACCOUNTS, including stored
or preserved copies of messages sent to and from the account,
draft messages, deleted messages, and messages maintained in
trash or any other folders or tags or labels, as well as all
header information associated with each email or message
(including the actual IP addresses of the sender and recipients
of the emails), and any related documents or attachments.

   iii. All records or other information stored by
subscriber(s) of the SUBJECT ACCOUNTS, including address books,
contact and buddy lists, calendar data, pictures, videos, notes,
texts, links, user profiles, account settings, access logs, and
files.

   iv.  All records pertaining to communications
between the PROVIDER and any person regarding the SUBJECT
ACCOUNTS, including contacts with support services and records
of actions taken.

  b.  All other records and information, including:

   i.  All activity, connection, and transactional
logs for all activity relating to each SUBJECT ACCOUNT described
above in Section II.10.a. (all log files, dates, times,

iv

durations, data transfer volumes, methods of connection, authentication logs, IP addresses, ports, routing information, dial-ups, and locations), including FaceTime call invitation logs, mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), messaging and query logs (including iMessage, SMS, and MMS messages), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My logs, logs associated with device activation and upgrades, and logs associated with web-based access of Apple services (including all associated identifiers);

       ii.  All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files);

       iii. All subscriber information, including the date on which the account was created, the length of service, the IP address used to register the account, the subscriber's full name(s), screen name(s), any alternate names, other account names or email addresses associated with the account, linked accounts, telephone numbers, physical addresses, and other identifying information regarding the subscriber, including any removed or changed names, email addresses, telephone numbers or physical addresses, the types of service utilized, account status, account settings, login IP addresses associated with session dates and times, as well as means and source of payment, including detailed billing records, **and including any changes**

v

**made to any subscriber information** or services, including specifically changes made to secondary email accounts, phone numbers, passwords, identity or address information, or types of services used, and including the dates on which such changes occurred, for the following accounts:

>        (I)   the SUBJECT ACCOUNTS.

>        iv.   All user connection logs and transactional information of all activity relating to the SUBJECT ACCOUNT described above in Section II.10.a., including all log files, dates, times, durations, data transfer volumes, methods of connection, IP addresses, ports, routing information, dial-ups, and locations, and including specifically the specific product name or service to which the connection was made.

### III. INFORMATION TO BE SEIZED BY THE GOVERNMENT

11.   For each SUBJECT ACCOUNT listed in Attachment A, the search team may seize:

>        a.   All information described above in Section II.10.a. that constitutes evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. §§ 2251 and 2252A (the "SUBJECT OFFENSES") between October 6, 2018 through July 20, 2021, namely:

>        i.   Messages, communications, pictures, video recordings, or still captured images that (1) are or contain child pornography; (2) that relate to the acquisition, distribution, or possession of child pornography; or (3) relate to the inducement, enticement, coercion, or other solicitation

of a minor to produce child pornography or to engage in any other sexual conduct;

       ii.  Information relating to who created, accessed, or used the SUBJECT ACCOUNTS, including records about their identities and whereabouts;

       iii. Information related to how and when the SUBJECT ACCOUNTS were accessed or used;

       iv.  Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information); and

       v.  Evidence that may identify any co-conspirators, aiders and abettors, or victims, such as any minor used to produce child pornography, or any third party who received, distributed, or produced child pornography, including records that help reveal their identities and whereabouts.

    b.  All records and information described above in Section II.10.b.

    c.  Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the SUBJECT OFFENSES and the account subscriber(s).

## IV.   <u>PROVIDER PROCEDURES</u>

    12.  IT IS ORDERED that the PROVIDER shall deliver the information set forth in Section II within 10 days of the service of this warrant.  Notwithstanding 18 U.S.C. § 2252/2252A or any similar statute or code, the provider shall disclose

responsive data by sending it to the following address via US
Mail, or to the following email address:

> Special Agent Kevin Leduc
> 34 Civic Center Plaza 4th floor, Santa Ana, CA 92701
> Desk 714-972-4183/Fax 714-972-4121
> Kevin.leduc@ice.dhs.gov

13.  IT IS FURTHER ORDERED that the PROVIDER shall provide
the name and contact information for all employees who conduct
the search and produce the records responsive to this warrant.